UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARLOS E. CÁRDENAS<br>1900 South Eads St.<br>Arlington, VA 22202<br><br>            Plaintiff,<br><br>v.<br><br>OFFICER T. TUBBS (Badge #477)<br>WMATA Transit Police<br>600 5th Street, NW<br>Washington, DC 20001,<br><br>OFFICER F. SANTIAGO (Badge #533)<br>WMATA Transit Police<br>600 5th Street, NW<br>Washington, DC 20001,<br><br>OFFICER D. BROWN (Badge #524)<br>WMATA Transit Police<br>600 5th Street NW<br>Washington, DC 20001,<br><br>OFFICER J.P. CHARLES<br>WMATA Transit Police<br>600 5th Street NW<br>Washington, DC 20001,<br><br>SERGEANT R. TURNER<br>WMATA Transit Police<br>600 5th Street NW<br>Washington, DC 20001,<br><br>OFFICERS JOHN DOE 1-3<br>WMATA Transit Police<br>600 5th St., N.W.<br>Washington, DC 20001,<br><br>            Defendants. | **FILED**<br>SEP 16 2011<br>Clerk, U.S. District & Bankruptcy<br>Courts for the District of Columbia<br><br>No. 11-cv-_____<br><br>JURY TRIAL DEMANDED<br><br>Case: 1:11-cv-01685<br>Assigned To : Sullivan, Emmet G.<br>Assign. Date : 9/16/2011<br>Description: Civil Rights - Non. Employ |

## COMPLAINT

(Seeking damages for police misconduct: violation of rights under the
Constitution of the United States and the law of the District of Columbia)

### INTRODUCTION

1. On September 18, 2010, Carlos E. Cárdenas entered the Metro system at Gallery Place with two friends and his bicycle. With no reason a Metro police officer behind him on the escalator grabbed the bicycle, sent it crashing down the escalator and when at the bottom Mr. Cárdenas inquired the reason, the officer called for back-up and a group of Metro police officers then detained, battered, and arrested Mr. Cárdenas in reprisal for his questioning. He even had to spend a night in jail. The officers' actions violated Mr. Cárdenas' rights under the Fourth Amendment to the Constitution of the United States and constituted false arrest and assault and battery under the laws of the District of Columbia. Mr. Cárdenas accordingly seeks compensatory and punitive damages, attorneys' fees, costs, and other appropriate relief.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question). Mr. Cárdenas brings this action under 42 U.S.C. § 1983 to vindicate his rights established under the Fourth Amendment to the United States Constitution. His claims under the common law of the District of Columbia arise from the same events as his constitutional claims and are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). The events giving rise to plaintiff's claims occurred in the District of Columbia.

## PARTIES

4. Plaintiff Carlos E. Cárdenas is an adult resident of the Commonwealth of Virginia.

5. Defendant Officer T. Tubbs is a sworn officer employed by the Washington Metropolitan Area Transit Authority (WMATA). At the time of the events at issue he was acting under color of law. At the time of the events at issue he was acting within the scope of his employment. He is sued in his individual capacity.

6. Defendant Officer F. Santiago is a sworn officer employed by the Washington Metropolitan Area Transit Authority (WMATA). At the time of the events at issue he was acting under color of law. At the time of the events at issue he was acting within the scope of his employment. He is sued in his individual capacity.

7. Defendant Officer D. Brown is a sworn officer employed by WMATA. At the time of the events at issue he was acting under color of law. At the time of the events at issue he was acting within the scope of his employment. He is sued in his individual capacity.

8. Defendant Officer J.P. Charles is a sworn officer employed by WMATA. At the time of the events at issue he was acting under color of law. At the time of the events at issue he was acting within the scope of his employment. He is sued in his individual capacity.

9. Defendant Sergeant R. Turner is a sworn officer employed by WMATA. At the time of the events at issue he was acting under color of law. At the time of the events at issue he was acting within the scope of his employment. He is sued in his individual capacity.

10. Officers John Doe 1-3 are sworn officers employed by WMATA. At the time of the events at issue they were acting under color of law. At the time of the events at issue they were acting within the scope of their employment. They are sued in their individual capacities.

## FACTS

11. On September 18, 2010, shortly after 8 p.m., Mr. Cárdenas and his friends Maria Avellaneda and Edwin DeLeon got on the first of two down escalators at the H Street entrance to the Gallery Place Metro station. Mr. Cárdenas carried Ms. Avellaneda's bicycle and stood still, the bicycle to his right, as the escalator descended.

12. Mr. Cárdenas walked from the bottom of the first escalator and stepped onto the second down escalator when someone pushed him from behind and said, "Move! Move! Get out of the way!" Surprised that the person did not pass on his left side, as there was room for a person to walk by, Mr. Cárdenas turned to see that it was a police officer (later identified as Officer T. Tubbs) who was forcefully pushing his back. Officer Tubbs told Mr. Cárdenas, "If you're on the escalator with a bike, you're walking with it." Mr. Cárdenas was confused (believing there was ample room to get by him) and did not know immediately how to respond to either the pushing or the implied order.

13. Ms. Avellaneda told Officer Tubbs it would be difficult to walk with the bicycle on the escalator. Officer Tubbs repeated his demands that Mr. Cárdenas walk down the escalator with the bicycle and kept pushing him.

14. The officer's final push was so forceful it knocked the bicycle from Mr. Cárdenas' grasp, causing it to fall a few feet down the escalator to the floor of the fare gate level of the station.

15. As Officer Tubbs walked towards the station manager's kiosk between the entrance and exit turnstiles, Mr. Cárdenas approached him and asked for an explanation of the incident. Officer Tubbs refused and made clear he didn't want to talk with Mr. Cárdenas.

16. Ms. Avellaneda asked Officer Tubbs to let her speak with his supervisor since "he had no need to push and yell when he had enough room to pass." Officer Tubbs said "it was an emergency," to which Ms. Avellaneda responded that he should have said that earlier while on the escalator.

17. Growing frustrated, Mr. Cárdenas asked Officer Tubbs if by his insistent yelling and pushing him on the escalator he had "lost his mind" and asked again for an explanation. Officer Tubbs responded, "Oh yeah? Watch this," and he radioed for backup. Within minutes, four or five MTPD officers ran down the escalators saying "Where is he? Where is he?" (which Mr. Cárdenas learned later might have been some kind of reference to an incident elsewhere in the station just before, that resulted in at least one arrest). The full group of officers formed a circle around Mr. Cárdenas. One officer shoved him in the chest and Mr. Cárdenas asked not to be pushed. The officers turned him around, pushed him to the floor, and piled on top of him, leaving large scrapes across his knuckles and bruising along his arms. Officers broke a part on his backpack pushing him to the ground and ripped his shirt when piling on top of him. They then handcuffed him.

18. At no time did Mr. Cárdenas resist arrest or initiate physical contact with any of the officers.

19. After handcuffing Mr. Cárdenas, officers pulled him into a standing position and then sat him down again near the kiosk. Again officers failed to respond to his repeated questions why he was being arrested.

20. The officers then led Mr. Cárdenas back up the escalator and out of the station around 8:15 p.m., gripping him tightly all the way and leaving bruises across his arm.

21. At the street level, officers searched Mr. Cárdenas' and his backpack while they waited for transport and again would not say why he was being arrested.

22. After a wait at the street level, Sergeant R. Turner spoke with both Mr. Cárdenas and Officer Tubbs to gather explanations of what happened. Officer Tubbs said he was helping Mr. Cárdenas with his bicycle and Mr. Cárdenas told the Sergeant that was not true. Sergeant Turner told Tubbs to arrest Mr. Cárdenas and Metro officers took him in patrol car #21616 to the Washington Metropolitan Police Department (MPD) First District station.

23. Officer Tubbs began the booking paperwork at the First District. He told Mr. Cárdenas he was being charged with resisting arrest, disorderly conduct and "a number of other offenses so you'll be here till Monday." Later paperwork showed only disorderly conduct. This was the first time any official told Mr. Cárdenas the reason for his arrest. MPD staff put him in a small holding cell at the station and later moved him to a larger cell where he waited about three hours. MPD staff completed booking and then transported him to the MPD Central Cellblock at 300 Indiana Avenue N.W.

24. At all times relevant to this complaint, Officers Tubbs, Santiago, Brown and Charles, Sergeant Turner and Officers John Doe 1-3 acted under color of law, statute, custom or usage of the District of Columbia.

25. Officers Tubbs, Santiago, Brown and Charles, Sergeant Turner and Officers John Doe 1-3 acted with malice towards Mr. Cárdenas and with reckless indifference to and in deliberate disregard of his constitutional and other legal rights.

26. At the time of Mr. Cárdenas' arrest, it was clearly established as a matter of law that a police officer may not seize or arrest an individual without probable cause to believe that the individual had committed, was committing, or was about to commit a criminal offense.

27. No reasonable police officer in Officer Tubbs' position could have believed that there was probable cause to arrest Mr. Cárdenas or any need for force to be used under the circumstances of his nonviolent conduct. And any officer who sees another acting unlawfully has a duty to intervene to stop the law violation in progress.

28. After spending Saturday night in the cellblock, Mr. Cárdenas requested at 7 a.m. Sunday morning to be taken to the hospital—the only way he understood while in custody he could get a daily medication he has taken for years. (He lacked a supply, having left home the night before not expecting to need to carry a morning dose with him.) MPD Officer Shelton arrived to transport him at 10 a.m.

29. Officer Shelton learned during the drive to George Washington University Hospital that Mr. Cárdenas had not been offered the opportunity to post collateral and forfeit. She consulted other officials by radio, turned around and returned him to the First District where he paid $35 to post and forfeit and gain his release from detention. MPD released him about noon after sixteen hours in custody.

30. Mr. Cárdenas filed a written complaint with the Internal Affairs office of the WMATA Transit Police in October 2010. Lieutenant Brown of WMATA Transit Police interviewed him but no official has responded since then to Mr. Cárdenas' repeated requests for information about the status of his complaint. His complaint has gone unanswered for ten months, although the WMATA has been fully on notice of the facts and his concerns.

31. As a result of defendants' conduct, Mr. Cárdenas was physically bruised and battered, was deprived of his liberty for most of a day, suffered a permanent arrest record, and suffered emotional distress.

**CLAIMS FOR RELIEF**

### Claim I: Violation of Fourth Amendment Rights -- Unlawful Search, Seizure, Use of Force
### (All defendants)

32. Mr. Cárdenas' conduct on September 18, 2010, did not provide probable cause or reasonable suspicion to believe that he had committed, was committing, or was about to commit any crime.

33. Defendants' actions, described above, violated Mr. Cárdenas' right under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizure and from the use of excessive force.

34. Defendants are jointly and severally liable to Mr. Cárdenas for these violations of his rights, pursuant to 42 U.S.C. § 1983.

### Claim II: False Arrest
### (All defendants)

35. Defendants' actions, described above, constituted false arrest and false imprisonment under the law of the District of Columbia.

36. Defendants are jointly and severally liable to Mr. Cárdenas for this violation of his rights under the law of the District of Columbia.

### Claim III: Assault and Battery
### (All defendants)

37. Defendants' actions constituted assault and battery under the law of the District of Columbia.

38. Defendants are jointly and severally liable to Mr. Cárdenas for this violation of his rights under the law of the District of Columbia.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that this Court:

(a) Rule that the actions of Defendant Officers T. Tubbs, F. Santiago, D. Brown and J.P. Charles, Sergeant R. Turner and Officers John Doe 1-3, as alleged herein, violated Carlos Cárdenas' rights under the Fourth Amendment to the United States Constitution and the laws of the District of Columbia;

(b) ENTER JUDGMENT awarding him compensatory and punitive damages against defendants in an amount appropriate to the evidence adduced at trial;

(c) ENTER JUDGMENT awarding him his costs and reasonable attorneys' fees in this action as provided in 42 U.S.C. § 1988; and

(d) GRANT him such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

_____
Arthur B. Spitzer, D.C. Bar #235960
Frederick V. Mulhauser, D.C. Bar #455377
American Civil Liberties Union of the Nation's Capital
1400 20th Street, N.W., Ste. 119
Washington, DC 20036
(202) 457-0800
(202) 452-1868 (fax)
artspitzer@aol.com
fmulhauser@aol.com

Attorneys for Carlos E. Cárdenas

September 16, 2011